**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

RICK ANTHONY BRANDES,

        Petitioner,

vs.

NICK LUDWICK,

        Respondent.

No. 13-CV-2072-LRR

**ORDER**

_____

### *TABLE OF CONTENTS*

I.    **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **PROCEDURAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . **2**

    *A.*    *Conviction.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *B.*    *Direct Appeal.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *C.*    *State Post-Conviction Relief Proceedings.* . . . . . . . . . . . . . . **4**
    *D.*    *Federal Habeas Corpus Action.* . . . . . . . . . . . . . . . . . . . . . **5**

III.  **FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

IV.  **STANDARDS OF REVIEW.** . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

    *A.*    *Requirements under 28 U.S.C. § 2254(d).* . . . . . . . . . . . . . . **11**
    *B.*    *Exhaustion and Procedural Default* . . . . . . . . . . . . . . . . . . **14**

V.    **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

    *A.*    *Grounds Litigated in the Iowa Courts.* . . . . . . . . . . . . . . . . **16**

        *1.*    *Ineffective assistance of counsel.* . . . . . . . . . . . . . . . . **16**
            *a.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . **16**
            *b.*    *Failure to pursue a competency evaluation.* . . . . . . . . **18**
            *c.*    *Failure to call two witnesses.* . . . . . . . . . . . . . . . **20**
                *i.*    *Trial counsel.* . . . . . . . . . . . . . . . . . . . . . . **20**
                *ii.*   *Post-conviction counsel.* . . . . . . . . . . . . . . . **22**

        *2.*    *Insufficient evidence of specific intent.* . . . . . . . . . . . . . **22**

        *3.*    *Improper exclusion of evidence.* . . . . . . . . . . . . . . . . . . **23**

    *B.*    *Grounds Not Litigated in the Iowa Courts.* . . . . . . . . . . . . . **24**

  1.  *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

  2.  *Additional claims.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

**VI.** *CERTIFICATE OF APPEALABILITY.* . . . . . . . . . . . . . . . . . . . . . . . **27**

**VII.** *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

## *I.  INTRODUCTION*

The matter before the court is Rick Anthony Brandes's ("the petitioner") "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus" ("petition") (docket no. 1).

## *II.  PROCEDURAL BACKGROUND*

### *A.  Conviction*

On March 29, 2006, after a bench trial, the Iowa District Court for Chickasaw County ("Iowa District Court"), Case No. FECR006327, found the petitioner guilty of kidnapping in the first degree with intent to commit sexual abuse in violation of Iowa Code sections 710.1 and 710.2.  Appendix ("App'x"), Judgment and Sentence (docket no. 14-3) at 289.  The petitioner was sentenced to life in prison without the possibility of parole.  *Id.*

### *B.  Direct Appeal*

On April 3, 2006, the petitioner appealed his conviction on three grounds: (1) there was insufficient evidence to support conviction due to incapacity to form specific intent to sexually abuse the victim; (2) trial counsel[1] were ineffective because they did not file a timely notice of diminished capacity defense; and (3) the Iowa District Court erred in refusing to admit evidence pertaining to a sperm fragment found during the victim's vaginal exam and in refusing to allow counsel to question the victim about her sexual history.  *See* App'x, Petitioner's Direct Appeal Brief (docket no. 14-4) at 25.

On December 28, 2007, the Iowa Court of Appeals affirmed the petitioner's conviction.  *State v. Brandes*, 745 N.W.2d 95 (Table), 2007 WL 4553478 (Iowa Ct. App.

---

[1] Because petitioner was charged with kidnapping in the first degree, he was represented at trial by two attorneys.  *See* App'x, Iowa District Court Findings of Fact (docket no. 14-3) at 278.

Dec. 28, 2007), App'x, Direct Appeal Opinion (docket no. 14-6). The Iowa Court of Appeals held that the evidence was sufficient to establish the petitioner had the ability to form the requisite specific intent to sexually abuse the victim. App'x, Direct Appeal Opinion (docket no. 14-6) at 8. Furthermore, the Iowa Court of Appeals found that trial counsel's untimely notice of his intent to rely on the defense of diminished capacity did not prejudice the petitioner because the Iowa District Court allowed the petitioner to present that defense anyway. *Id.* at 10-11. Finally, the Iowa Court of Appeals held that the Iowa District Court did not err in refusing to admit evidence pertaining to the sperm fragment recovered during the victim's vaginal exam because it was irrelevant to the petitioner's defense, especially considering that neither the petitioner nor his co-defendant[2] claimed vaginal intercourse occurred, and it was insufficiently probative to overcome Iowa's bar on introducing evidence of past sexual behavior of a sexual assault victim. *Id.* at 12-13. Moreover, it concluded that the Iowa District Court's refusal to permit questioning of the victim about her sexual history did not breach the petitioner's constitutional rights because irrelevant evidence is never constitutionally required. *Id.* at 13. The petitioner applied for further review before the Iowa Supreme Court, asserting only: (1) insufficient evidence that he could form specific intent to commit sexual abuse and (2) improper exclusion of the evidence pertaining to the sperm fragment found during the victim's vaginal exam.[3] *See* App'x, Application for Further Review (docket no. 14-7) at 15-25. On February 19, 2008, the Iowa Supreme Court denied the petitioner's application for further review. App'x, Order Denying Further Review (docket no. 14-8). Procedendo issued on February 22, 2008 (docket no. 14-9).

---

[2] The petitioner's co-defendant was Travis Alve.

[3] Though the petitioner did not explicitly raise insufficiency of the evidence or admission of evidence as grounds for relief in the petition, the court will nonetheless address them because the petitioner provided the Iowa courts a full and fair opportunity to adjudicate these grounds.

## C.  State Post-Conviction Relief Proceedings

On April 28, 2008, the petitioner sought post-conviction relief in the Iowa District Court.  He asserted trial counsel were ineffective in three respects: (1) trial counsel failed to request a competency evaluation; (2) trial counsel failed to request a change of venue; and (3) trial counsel failed to call the petitioner's neighbor and the co-defendant's girlfriend as witnesses.  *See Brandes v. State*, 825 N.W.2d 327 (Table), 2012 WL 5598523 (Iowa Ct. App. Nov. 15, 2012), App'x, Post-Conviction Relief ("PCR") Appeal Opinion (docket no. 14-12) at 2.  The Iowa District Court denied post-conviction relief.  *See* App'x, PCR Appeal Opinion (docket no. 14-2) at 2.  The petitioner appealed, asserting that trial counsel was ineffective for failing to request a competency hearing and for failing to call the two witnesses.  *Id*.  The petitioner did not appeal his change of venue claim.  *Id* at 8.[4]  In his appeal, the petitioner also claimed that post-conviction counsel was ineffective for failing to call the same two witnesses that trial counsel had failed to call.  *Id*.

On November 15, 2012, the Iowa Court of Appeals affirmed the denial of post-conviction relief.  *See* App'x, PCR Appeal Opinion (docket no. 14-12).  The Iowa Court of Appeals found that trial counsel were not ineffective for failing to request a competency evaluation because the petitioner's psychiatrist had assured trial counsel that the petitioner was competent so long as he was taking his medication and trial counsel confirmed with jailers that the petitioner was taking his medication.  *Id*. at 5.  Moreover, the Iowa Court of Appeals held that because the petitioner was able to assist trial counsel during trial, he

---

[4] The court notes that different counsel represented the petitioner at trial and post-conviction proceedings before the Iowa District Court.  *See* App'x, Iowa District Court Findings of Fact (docket no. 14-3) at 278; App'x, PCR Brief for Appellant (docket no. 14-10) at 13.  In appellate proceedings, he was represented by Iowa Assistant Appellate Defender Patricia Reynolds.  *See* App'x, Direct Appeal Opinion (docket no. 14-6) at 1; App'x, PCR Appeal Opinion (docket no. 14-12) at 1.

could not show that trial counsel's failure to request an evaluation resulted in any prejudice. *Id.* at 6. The Iowa Court of Appeals also rejected the petitioner's claim regarding trial counsel's failure to call two witnesses. *Id.* at 7. It found that the witnesses' testimony would have been either irrelevant to the petitioner's defense of diminished capacity or cumulative because other witnesses, including the petitioner himself, testified to the same facts. *Id.* at 7-8. As a result, the Iowa Court of Appeals concluded that declining to call the two witnesses was merely a tactical decision by the petitioner's trial counsel and post-conviction counsel. *Id.* at 8-9. The petitioner applied for further review, asserting only that trial counsel failed to request a competency evaluation. *See* App'x, Application for Further Review (docket no. 14-13) at 17. On January 9, 2013, the Iowa Supreme Court denied further review (docket no. 14-14). Procedendo issued on January 15, 2013 (docket no. 14-15).

### D. Federal Habeas Corpus Action

On October 23, 2013, the petitioner filed the petition,[5] asserting three grounds: (1) ineffective assistance of trial counsel for failing to request a competency evaluation, (2) ineffective assistance of trial counsel for failing to call two witnesses and (3) ineffective assistance of post-conviction counsel for failing to call the same two witnesses. Petition (docket no. 1) at 5-6. On February 20, 2014, Nick Ludwick ("the respondent"), Warden of the Iowa State Penitentiary in Fort Madison, Iowa, filed an answer in which he argues that all of the petitioner's grounds are unexhausted, barred, procedurally defaulted and/or without merit. *See* Answer (docket no. 13).

On October 19, 2014, the petitioner filed a brief ("petitioner's brief") in which he asserts the three grounds raised in the petition as well as additional ineffective assistance

---

[5] The court notes that the petitioner used a form for a person in federal custody pursuant to 28 U.S.C. § 2255. *See* Petition (docket no. 1) at 1. The petitioner is in custody pursuant to a state court judgment and his petition is therefore brought under 28 U.S.C. § 2254.

of trial counsel grounds: (1) failure to request a change of venue; (2) failure to insist on a jury trial instead of a bench trial; (3) failure to request a competency hearing prior to trial; (4) failure to investigate the facts, including those that relate to the victim's mental health history and competency, the interactions that the defendant had with the co-defendant's girlfriend and the neighbor who lived next door; (5) failure to allow him to interact with the Iowa District Court; (6) failure to adequately explain to the Iowa District Court his version of what occurred; (7) failure to challenge the State's evidence; (8) failure to call witnesses, including the co-defendant, others who had knowledge of events, the private investigator, the co-defendant's girlfriend, three men whom the petitioner asserts had sexual intercourse with the victim the day after the kidnapping, an individual from the crime lab, the victim's doctors, a psychiatric expert and the victim's husband; (9) failure to establish that his DNA was not on the victim and his DNA would have been in the apartment because it was where he lived; (10) failure to properly question the victim on cross-examination, challenge the victim's inconsistent stories, ask about her medications and use of illegal substances and question her about hallucinating; (11) failure to introduce evidence of the co-defendant's drug history and criminal history; (12) failure to ask the co-defendant's mother whether she used illegal substances, took medications and had mental health issues; (13) failure to introduce evidence that relates to his arrest and the victim's knife; (14) failure to object to the medical examiner's generalized findings and to properly question him on cross-examination; (15) failure to properly cross-examine the man who was in the bar; (16) failure to protect the petitioner from testifying on his own behalf; (17) failure to properly question the petitioner and to object to various aspects of the State's cross-examination, including but not limited to the State's questions regarding his mental condition; and (18) failure to adequately explain his mental health issues. *See* Petitioner's Brief (docket no. 26). On October 31, 2014, the respondent filed a merits brief ("respondent's brief") in which he argues that each of the petitioner's grounds is defaulted,

untimely and/or without merit. *See* Respondent's Brief (docket no. 30).

On November 17 and November 25, 2014, the petitioner filed replies in which he reiterates the arguments made in the petitioner's brief and asserts that (1) the respondent's brief misstates the record and (2) trial counsel failed to properly explain different plea options to him. *See* Replies (docket nos. 32, 34).

On April 30, June 9 and June 15, 2015, the petitioner filed notices in which he asserts additional grounds for relief: (1) miscarriage of justice because his sentence is more severe than the sentence given to the co-defendant, who reached a plea agreement with prosecutors; (2) a Sixth Amendment violation because he was not present during the victim's deposition; (3) ineffective assistance of trial counsel for failing to call three witnesses; (4) ineffective assistance of trial counsel for failing to fully cross-examine several witnesses; (5) prosecutorial misconduct because the State knowingly lied about the facts of the petitioner's case; (6) ineffective assistance of trial counsel for failing to argue double jeopardy; (7) the charge of kidnapping in the first degree was improper; (8) ineffective assistance of trial counsel for failing to show there was insufficient evidence to support conviction due to incapacity to form specific intent to sexually abuse the victim; (9) ineffective assistance of trial counsel for failing to call the co-defendant and ask him why he pleaded guilty; and (10) the conviction for kidnapping in the first degree cannot stand. *See* Notices (docket nos. 35, 36, 38, 39). The respondent filed a response (docket no. 40) on June 17, 2015, and the petitioner filed a reply (docket no. 41) on July 1, 2015.

## III. FACTUAL BACKGROUND

The relevant facts[6] were summarized by the Iowa Court of Appeals:

On May 26, 2005, the victim was working as a bartender at

---

[6] The court views the facts in the light most favorable to the verdicts. *See Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *Copeland v. Washington*, 232 F.3d 969, 971 (8th Cir. 2000); *Mallett v. Bowersox*, 160 F.3d 456, 458 (8th Cir. 1998). When relevant, additional facts are discussed in the court's analysis.

McShanney's Bar in New Hampton. [The petitioner] and [co-defendant] Travis Alve were at the bar, drinking and playing pool. They repeatedly invited the victim to an after-hours party at [the petitioner's] apartment. She initially refused, but eventually agreed to go with them. She testified that she accepted the invitation because she had recently moved to New Hampton and wanted to meet people. Her husband was in jail at the time.

After the victim closed the bar at 2:00 a.m., [the petitioner] and Alve stayed while she locked up. The three walked the block to [the petitioner's] apartment. When they arrived, [the petitioner] locked the front door, and then offered the victim a beer, which she declined. The three sat at the kitchen table and smoked cigarettes. When nobody else showed up after about ten minutes, the victim began to feel uncomfortable and told the men she needed to go home to let her dog out.

[The petitioner] told the victim he had something for her, took her to the nearby bedroom, and gave her a Seroquel, a prescription medication used to treat bipolar disorder. The victim did not take the pill, but kept it and later hid it in her sock. When she tried walking toward the door of the bedroom, Alve grabbed her from behind. She was unable to remove Alve's hands from her waist. She pulled out a knife. [The petitioner] told Alve about the knife. When the victim started to scream, Alve started to strangle her and told her they would slit her throat if she screamed. She stopped screaming. While [the petitioner] was trying to get the knife from the victim's hand, his hand was cut. During the struggle, Alve got his forearm around the victim's throat and leaned her back into the bed so her feet did not touch the floor. She lost consciousness. When she came to, she was face-down on the floor, her nose was bleeding, and she was lying in a pool of blood. [The petitioner] and Alve were standing over her, telling her they were going to teach her a lesson for pulling a knife on them. [The petitioner] was holding her knife and told her they were going to use the knife on her.

Alve began removing most of the victim's clothing. Alve then repeatedly anally raped her. She testified that, while Alve was raping her, [the petitioner] was in the living room much of the time, but would come into the bedroom "every so often." [The petitioner] would ask her if she wanted him to touch her, and she replied no, she just wanted to go home. [The petitioner] also held the knife to her throat and told her he was going to slit her throat and watch her bleed and laugh at her. At some point during the night, [the petitioner] used the knife to cut off her shirt. On two occasions, [the petitioner] held a knife to her throat and forced her to perform oral sex on him. [The petitioner] also performed oral sex on her several times.

[The petitioner] and Alve held the victim in [the petitioner's] apartment for over four hours. Two or three times the men allowed her to get dressed and told her they were going to let her leave, but then prevented her from leaving. [The petitioner] kept her from leaving by dragging her around by her hair, arms, and legs. The victim testified that [the petitioner] and Alve continually threatened to kill her and told her that, if she went to law enforcement authorities, "they would have the Sons of Silence and the Hells Angels come after [her] and they would do worse." She also testified that [the petitioner] told her it wouldn't matter if she went to the authorities because "everyone knows that he's crazy and that he would get away with it" and that he would come in the bar and make sure she did not tell anyone.

Alve eventually fell asleep on the couch. The victim testified that [the petitioner] kept saying he was going to keep her hostage, but Alve said she could go. [The petitioner] told her to wake Alve up to see if she could go. She did and initially Alve said something about killing her. [The petitioner] then came toward her with a knife. She ducked in a corner and started screaming. Alve then woke up and told [the petitioner] that the victim needed to leave before she woke up Alve's mother and girlfriend, who were in an upstairs apartment with his two-week-old son. The men told the victim she had five minutes to leave, or she would not be leaving at all. She left

and walked to her home.

At home, the victim threw her shirt in the garbage and her other clothes in the laundry and took a shower. Later that day, she visited her mother and husband, who told her to go to the police. Later that afternoon, she went to the sheriff's office in New Hampton and reported the incident. New Hampton Police Officer Jeff Jackson interviewed the victim and sent her to the hospital for an examination.

The doctor who examined the victim found tenderness in her neck area, hemorrhages in her posterior left scalp, where her hair had been forcibly removed, tearing and swollenness around her nose, and a contusion on her shoulder, consistent with a rug burn. The doctor also noted tenderness and several tears around her rectal area, consistent with non-consensual sex. He noted multiple hemorrhages in both eyes, consistent with the increased pressure in the blood vessels that occurs when a person has been strangled or the neck has been forcibly constricted.

That evening, Officer Jackson obtained a warrant to search [the petitioner's] apartment. Jackson executed the warrant shortly after midnight. He discovered bloodstains on the bedroom floor and several bloody towels. Testing confirmed it was the victim's blood on the carpet and towels.

While Jackson was drafting the application for the search warrant, the police received a report of a man at Josie's bar threatening patrons with a knife. Officer Jeremy Copp responded to the call. The man with a knife was reportedly walking south from the bar. Copp eventually found the man and turned his spotlight on him. He recognized the man as [the petitioner]. Copp got out of his squad car, drew his weapon, and told [the petitioner] to keep his hands up and get on the ground. [The petitioner] did not comply, but continued to walk away. Eventually, Copp tackled [petitioner]. [The victim's] knife was found in the grass approximately twenty feet from where Copp first spotted [the petitioner]. After his

arrest, Jackson observed and photographed an injury to [the petitioner's] left hand.

App'x, Direct Appeal Opinion (docket no. 14-6) at 2-5.

## IV. STANDARDS OF REVIEW

### A. Requirements under 28 U.S.C. § 2254

Where a claim is properly before the court, the United States Code provides the standard for habeas corpus review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, "[s]ection 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001).

Regarding an erroneous decision of law, a state court decision can be "contrary to" Supreme Court precedent if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Further, the statutory phrase "'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

An "unreasonable application" of Supreme Court precedent can arise in one of two ways:

> First, a state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the Supreme] Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407. Thus, "[a] state court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407-08 (alterations in original); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (discussing the "unreasonable application" clause). Additionally,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application" clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 411. The Eighth Circuit Court of Appeals provided the following standard for an unreasonable application of law: "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) (quoting *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999)) (internal quotation marks omitted) (alteration in original) .

Under 28 U.S.C. § 2254(d)(2), federal habeas corpus "relief may be granted on a claim adjudicated in state court if the state court proceeding 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.'" *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d)(2)). "Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact." *Weaver*, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also Weaver*, 241 F.3d at 1030 ("[O]n habeas review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

Applying these standards to the present case, the court must determine whether (1) the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law; or (2) the Iowa courts reached an unreasonable determination of the facts in light of the evidence in the record. *See, e.g., Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (discussing the applicable standard); *Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (same); *Weaver*, 241 F.3d at 1029-30 (same); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000) (same).

## B. Exhaustion and Procedural Default

A petitioner must exhaust all available state court remedies before obtaining federal habeas corpus review. 28 U.S.C. § 2254(b)(1)(A). To fulfill the exhaustion requirement, a petitioner must provide the highest state court with a full and fair opportunity to consider all of the claims before presenting them to a federal court. *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986); *see also* 28 U.S.C. § 2254(c). This requires a petitioner to invoke "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Iowa, a "prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts." *Welch v. Lund*, 616 F.3d 756, 759 (8th Cir. 2010).

The fair presentment component of the exhaustion requirement compels a petitioner to "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993) (quoting *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir. 1988)) (internal quotation marks omitted). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus petition have been properly raised in the petitioner's state court proceedings. *See Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir.1995); *Flieger v. Delo*, 16 F.3d 878, 884-85 (8th Cir. 1994).

Additionally, failure to exhaust a claim in state court may implicate the independent and adequate state ground doctrine. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Specifically, the Supreme Court explained:

> 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Because "[t]his

requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125, n.28, 102 S. Ct. 1558, 1570, n.28, 71 L. Ed.2d 783 (1982), it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples*, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060, 103 L. Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.

*Gray*, 518 U.S. at 161-62 (alterations in original). Apart from showing good cause for his failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation, a petitioner may have a procedurally defaulted claim reviewed if he can "demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002); *Hatcher v. Hopkins*, 256 F.3d 761, 763 (8th Cir. 2001); *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 985 (8th Cir. 1992); *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir. 1989).

## V. DISCUSSION

The petitioner asserts several grounds for habeas corpus relief under 28 U.S.C. § 2254. He contends that the Iowa courts' decisions regarding each of his grounds were contrary to, or involved an unreasonable application of, clearly established federal law, and that the Iowa courts' rulings were based on an unreasonable determination of the facts in light of the evidence presented, which was insufficient to support his conviction. The three grounds that the petitioner raises in his petition were litigated, though not necessarily exhausted, in the Iowa courts: (1) ineffective assistance of trial counsel for failing to pursue a competency evaluation, (2) ineffective assistance of trial counsel for failing to call two witnesses and (3) ineffective assistance of post-conviction counsel for failing to call the same two witnesses. Additionally, the court will liberally construe the petitioner's

brief and notices to invoke the two additional grounds that he exhausted on direct appeal: (1) insufficient evidence to support a finding of specific intent and (2) improper exclusion of evidence. The petitioner's remaining grounds, however, are unexhausted, procedurally barred and without merit.

### A. Grounds Litigated in the Iowa Courts

### 1. Ineffective assistance of counsel

The petitioner claims that his trial counsel and post-conviction counsel were constitutionally ineffective.

#### a. Applicable law

The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const. amend. VI. Furthermore, there is a constitutional right to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Douglas v. California*, 372 U.S. 353, 357-58 (1963). An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Williams*, 529 U.S. at 390 (reasserting the *Strickland* standard). Although *Strickland* requires a showing of both deficient performance and prejudice, "a court deciding an ineffective assistance claim [need not] . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [petitioner] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *See id.*; *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) ("We operate on the 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (stating that courts must afford counsel broad latitude to make strategic and tactical choices). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id.*

In the context of reviewing petitions under 28 U.S.C. § 2254, the Supreme Court has set forth a "doubly" deferential standard for ineffective assistance claims. *Harrington*

*v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (citations omitted)). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* Accordingly, the issue the court must decide "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### b. Failure to pursue a competency evaluation

The petitioner contends that his trial counsel were constitutionally ineffective because they failed to request a competency evaluation before proceeding to trial. Petition (docket no. 1) at 4; Petitioner's Brief (docket no. 26) at 7-8. The petitioner asserts that he was unable to assist his trial counsel because of severe mental illness, including paranoia and delusions.

The Iowa Court of Appeals found that the petitioner's trial counsel did not fail an essential duty because the petitioner was able to understand the proceedings and assist his trial counsel. *See* App'x, PCR Appeal Opinion (docket no. 14-12) at 4-7. In reaching that assessment, the Iowa Court of Appeals cited to *Dusky v. United States*, which frames the competency inquiry as "sufficient present ability to consult with [the defense attorney] with a reasonable degree of rational understanding—and whether [the defendant] has a rational as well as factual understanding of the proceedings against him." 362 U.S. 402, 402 (1960) (per curiam). The petitioner did not dispute that the Iowa Court of Appeals used the correct federal standard. *See* App'x, PCR Application for Further Review (docket no. 14-13) at 17 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996), which cites to *Dusky* for the competency standard); Petitioner's Brief (docket no. 26) at 7-8. Moreover, the petitioner has not introduced any evidence to rebut the presumption that the Iowa courts' factual determinations were correct, let alone the "clear and convincing evidence" required

by 28 U.S.C. § 2254(e)(1) to attack the finding of guilt.

The question then becomes whether, under § 2254(d)(1), the Iowa Court of Appeals reasonably applied the *Dusky* standard to the facts of the petitioner's case. *See Williams*, 529 U.S. at 407-08. The court finds that it did. *Dusky* requires that criminal defendants both have a reasonable degree of understanding of the proceedings and that they are able to sufficiently help their counsel mount a defense. *See Dusky*, 362 U.S. at 402. The Iowa Court of Appeals found that the petitioner was able to communicate with his trial counsel throughout his trial and assist trial counsel in making decisions about his case. App'x, PCR Appeal Opinion (docket no 14-12) at 5-6. Moreover, the Iowa Court of Appeals found that the petitioner understood the nature of the proceedings and was able to competently waive his right to a jury trial. *Id.* at 6. Given these facts, the Iowa Court of Appeals' application of the *Dusky* standard was not unreasonable under § 2254(d)(1).

The question then becomes whether, under *Strickland,* the petitioner's trial counsel acted in an objectively unreasonable way when they declined to pursue a competency evaluation for the petitioner. *See Strickland*, 466 U.S. at 688. There is a strong presumption that trial counsel acted competently and exercised reasonable professional judgment. *Id.*; *see also Taylor*, 258 F.3d at 818. The Iowa courts found that the petitioner's trial counsel consulted the petitioner's psychiatrist, Dr. Akbar, who informed trial counsel that so long as the petitioner was on his medication, he was competent to stand trial. App'x, PCR Appeal Opinion (docket no. 14-12) at 5. The petitioner's trial counsel also confirmed with the jail where the petitioner was detained that he was taking his medications. *Id.* Based on these facts, the court finds that the Iowa Court of Appeals' determination that the petitioner's trial counsel had no essential duty to have the petitioner evaluated for competency to stand trial was reasonable. Accordingly, the Iowa Court of Appeals' conclusion that the petitioner's trial counsel did not provide ineffective assistance was reasonable.

The Iowa Court of Appeals also held that had the petitioner been evaluated, it is likely that he would have been found competent to stand trial under Iowa Code § 812.3(1). *See* App'x, PCR Appeal Opinion (docket no 14-12) at 7. A federal habeas court cannot disturb a state court ruling based solely on state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998). Therefore, the court must accept that it is likely that the petitioner would have been found competent. Accordingly, the Iowa courts' determination that the petitioner cannot satisfy the *Strickland* prejudice prong was reasonable.

Because the Iowa Court of Appeals reasonably applied the *Strickland* standard, the court must deny the petition on this ground.

### c. Failure to call two witnesses

### i. Trial counsel

The petitioner contends that trial counsel were constitutionally ineffective because they failed to call two witnesses: the petitioner's next door neighbor and the co-defendant's girlfriend, who was in an upstairs apartment on the night of May 26, 2005. *See* Petition (docket no. 1) at 4-5; Petitioner's Brief (docket no. 26) at 2-3, 6-7. The petitioner asserts that, if called, his neighbor would have testified to hearing no screaming coming from the petitioner's apartment and the co-defendant's girlfriend would have testified that the petitioner came to an upstairs apartment on several occasions during the night in question. *Id.*

The petitioner asserted these claims before the Iowa District Court and the Iowa Court of Appeals, but he did not assert them in his application for further review to the Iowa Supreme Court. *See* App'x, PCR Application for Further Review (docket no. 14-13) at 17-20. In Iowa, a "prisoner whose appeal is deflected to the Iowa Court of Appeals

must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts." *Welch*, 616 F.3d at 789. Because the petitioner failed to raise this ground in his application for further review, he failed to properly exhaust it in the Iowa courts. Therefore, this ground is procedurally barred. *See* 28 U.S.C. § 2254(b)(1)(A); *see also* § 2254(c).

But even if the petitioner had exhausted this ground, it would fail on the merits. The Iowa Court of Appeals held that the next-door neighbor's testimony was irrelevant to the petitioner's diminished capacity defense. App'x, PCR Appeal Opinion (docket no. 14-12) at 7. And, it determined that the testimony of the co-defendant's girlfriend was cumulative because the co-defendant's mother and the petitioner himself testified that he had been in an upstairs apartment on occasion during the night in question. *Id.* at 7-8. As a result, the Iowa Court of Appeals concluded that (1) the petitioner's trial counsel made a reasonable strategic decision not to call the two witnesses because neither would help the petitioner's defense and (2) trial counsel did not fail an essential duty. *Id.* at 8. The court finds that the Iowa courts properly applied the deferential *Strickland* standard. Neither of the witnesses, even if they testified precisely as the petitioner asserts, would have been helpful to his defense. Therefore, the Iowa Court of Appeals reasonably determined that the petitioner's trial counsel had no essential duty to call these witnesses.

Similarly, the Iowa Court of Appeals reasonably applied *Strickland* when it found that the petitioner was not prejudiced when his trial counsel declined to call the witnesses in question. The Iowa Court of Appeals found no prejudice in light of the "overwhelming evidence of [the petitioner's] guilt" and the fact that "[t]he complaining witness offered compelling testimony supported by all the physical evidence of her assault during her confinement by [the petitioner]." App'x, PCR Appeal Opinion (docket no. 14-12) at 8. The petitioner has failed to introduce the clear and convincing evidence required to rebut the court's presumption that the Iowa courts' factual determinations were correct. *See* 28

U.S.C. § 2254(e)(1). Therefore, under the facts on the record, the Iowa Court of Appeals reasonably concluded that the petitioner cannot establish prejudice under *Strickland*.

Habeas relief on this ground is procedurally barred and without merit. Accordingly, the court must deny the petition on this ground.

### ii. Post-conviction counsel

The petitioner contends that post-conviction counsel was constitutionally ineffective for failing to call the same two witnesses that trial counsel failed to call. Petition (docket no. 1) at 4-5; Petitioner's Brief (docket no. 26) at 6-7. The court must deny relief on this ground because the petitioner does not have a federal constitutional right to assistance of counsel in post-conviction proceedings in the Iowa courts. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). Without a constitutional right to counsel during post-conviction proceedings, the petitioner cannot claim that post-conviction counsel was constitutionally ineffective. 28 U.S.C. § 2254(i); *Coleman*, 501 U.S. at 752.

### 2. Insufficient evidence of specific intent

The petitioner asserts that the Iowa courts erred in finding there was sufficient evidence to establish that the petitioner had specific intent to sexually abuse the victim.[7] *See* Petitioner's Brief (docket no. 26) at 2-4; Petitioner's Second Reply Brief (docket no. 34) at 2; Petitioner's Notice (docket no. 35) at 1. The Iowa Court of Appeals found on direct appeal that the evidence was sufficient to satisfy the specific intent standard under

---

[7] The court liberally construes the petitioner's brief and subsequent notices to invoke this ground. The court notes that the petitioner did not timely request relief on this ground but the court will consider it out of an abundance of caution. Though the respondent argues that this ground was not exhausted because it was never presented to the Iowa courts as a federal constitutional issue, *see* Respondent's Brief (docket no. 30) at 33-34, the court notes that sufficiency of the evidence claims ordinarily implicate defendants' federal and state-law due process rights. Accordingly, the court presumes exhaustion and reaches the merits.

Iowa law. App'x, Direct Appeal Opinion (docket no. 14-6) at 8. Because that legal determination was exclusively under Iowa law, it is not subject to review by a federal habeas court. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Rose*, 423 U.S. at 21; *see also Bounds*, 151 F.3d at 1118. Therefore, the only remaining issue is one of fact: whether the Iowa Court of Appeals made an unreasonable determination based on the facts in the record. *See* 28 U.S.C. § 2254(d)(2). The Iowa Court of Appeals noted that "important factors" indicated that the petitioner was capable of forming specific intent despite his psychiatrist's testimony to the contrary, including "holding a knife to the victim's throat and warning her not to go to the police" and the petitioner's statement after the incident "that he planned to take another woman back to his apartment at knifepoint." App'x, Direct Appeal Opinion (docket no. 14-6) at 10. The petitioner bears the burden of rebutting the court's presumption that the Iowa Court of Appeals' factual determinations were correct. *See* 28 U.S.C. § 2254(e)(1). The petitioner has not done so. As a result, the court finds that the Iowa courts made a reasonable determination based on the facts in the record. Accordingly, the court must deny relief on this ground.

### 3. *Improper exclusion of evidence*

The petitioner asserts that the Iowa courts' exclusion of evidence of a sperm fragment found during the victim's vaginal exam abridged his constitutional rights to confront his accuser and to a fair trial.[8] *See* Petitioner's Brief (docket no. 26) at 3-4; Petitioner's Notice (docket no. 36) at 1. The Iowa Court of Appeals found on direct appeal that the petitioner's federal constitutional rights were not abridged because the evidence he sought to admit was not relevant to his defense. App'x, Direct Appeal

---

[8] The court liberally construes the petitioner's brief and subsequent notices to invoke this ground. The court notes that the petitioner did not timely request relief on this ground. However, the court will consider this ground out of an abundance of caution and because it was fully and fairly presented to the Iowa courts.

Opinion (docket no. 14-6) at 13. This was not an unreasonable application of federal law because neither the Confrontation Clause nor the Due Process Clause require admission of irrelevant evidence. *See United States v. Nixon*, 418 U.S. 683, 711 (1974); *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir. 1978). The evidence at issue had no bearing on the petitioner's proffered defense of diminished capacity. Moreover, "[t]here was no demonstrated relationship between a sperm cell in the victim's vagina and her anal injuries." App'x, Direct Appeal Opinion (docket no. 14-6) at 13. Therefore, the Iowa Court of Appeals reasonably determined that no constitutional injury resulted from exclusion of irrelevant evidence. Accordingly, the court must deny relief on this ground.

### B. Grounds Not Litigated in the Iowa Courts

The petitioner asserts numerous grounds for the first time in his brief, replies and subsequent notices.

#### 1. Applicable law

Petitioners in custody pursuant to a state court judgments have one year from "the date on which the [state court] judgment became final by the conclusion of direct review" to file an application for a writ of habeas corpus in federal district court. 28 U.S.C. § 2244(d)(1)(A). However, the statute of limitations does not run while the petitioner seeks post-conviction review in the state courts. 28 U.S.C. § 2244(d)(2). The one-year statute of limitations "applies to each claim within an application." *DeCoteau v. Schweitzer*, 774 F.3d 1190, 1192 (8th Cir. 2014). Therefore, each ground for habeas relief must be asserted before the one-year statute of limitations has run. *See id.* Additionally, the rules governing 28 U.S.C. § 2254 cases direct petitioners to "specify all grounds for relief available to the petitioner," rather than litigating grounds piecemeal. Rule 2 of the Rules Governing § 2254 Cases.

## 2. *Additional claims*

In the petitioner's brief, the petitioner asserts additional claims of ineffectiveness of trial counsel: (1) failure to request a change of venue; (2) failure to insist on a jury trial instead of a bench trial; (3) failure to request a competency hearing prior to trial; (4) failure to investigate the facts, including those that relate to the victim's mental health history and competency, the interactions that the defendant had with the co-defendant's girlfriend and the neighbor who lived next door; (5) failure to allow him to interact with the Iowa District Court; (6) failure to adequately explain to the Iowa District Court his version of what occurred; (7) failure to challenge the State's evidence; (8) failure to call witnesses, including the co-defendant, others who had knowledge of events, the private investigator, the co-defendant's girlfriend, three men whom the petitioner asserts had sexual intercourse with the victim the day after the kidnapping, an individual from the crime lab, the victim's doctors, a psychiatric expert and the victim's husband; (9) failure to establish that the petitioner's DNA was not on the victim and his DNA would have been in the apartment because it was where he lived; (10) failure to properly question the victim on cross-examination, challenge the victim's inconsistent stories, ask about her medications and use of illegal substances and question her about hallucinating; (11) failure to introduce evidence of the co-defendant's drug history and criminal history; (12) failure to ask the co-defendant's mother whether she used illegal substances, took medications and had mental health issues; (13) failure to introduce evidence that relates to his arrest and the victim's knife; (14) failure to object to the medical examiner's generalized findings and to properly question him on cross-examination; (15) failure to properly cross-examine the man who was in the bar; (16) failure to protect the petitioner from testifying on his own behalf; (17) failure to properly question the petitioner and to object to various aspects of the State's cross-examination, including but not limited to the State's questions regarding his mental condition; and (18) failure to adequately explain his mental health issues. *See* Petitioner's

Brief (docket no. 26).

In his replies, the petitioner makes two additional claims: (1) the respondent's brief misstated the record and (2) trial counsel failed to properly explain different plea options to him. *See* Replies (docket nos. 32, 34).

In subsequent notices to the court, the petitioner restates claims made in the petitioner's brief and asserts additional claims of: (1) miscarriage of justice because his sentence is more severe than the one given to the co-defendant who reached a plea agreement with prosecutors; (2) a Sixth Amendment violation because he was not present during the victim's deposition; (3) ineffective assistance of trial counsel for failing to call three witnesses; (4) ineffective assistance of trial counsel for failing to fully cross-examine several witnesses; (5) prosecutorial misconduct because the State knowingly lied about the facts of the petitioner's case; (6) ineffective assistance of trial counsel for failing to argue double jeopardy; (7) the charge of kidnapping in the first degree was improper; (8) ineffective assistance of trial counsel for failing to show there was insufficient evidence to support conviction due to incapacity to form specific intent to sexually abuse the victim; (9) ineffective assistance of trial counsel for failing to call the co-defendant and ask him why he pleaded guilty; and (10) the conviction for kidnapping in the first degree cannot stand. *See* Notices (docket nos. 35, 36, 38, 39).

Each of these grounds is untimely under 28 U.S.C. § 2244(d)(1). The petitioner's direct appeal concluded on February 22, 2008. App'x, Procedendo (docket no. 14-9). On April 3, 2008, the petitioner filed an application for post-conviction relief in the Iowa District Court. *See* App'x, Petitioner's PCR Brief (docket no. 14-10) at 8. After appellate proceedings, post-conviction procedendo issued on January 15, 2013. App'x, Procedendo (docket no. 14-15). Therefore, the petitioner had until January 15, 2014 to raise grounds for habeas relief. The petitioner filed the petition (docket no. 1) on October 13, 2013, which was within the allowed time. However, the petitioner's brief (docket no. 26) was

submitted on August 13, 2014, the petitioner's replies were submitted on November 17 and November 25, 2014 (docket nos. 32, 34) and his subsequent notices were submitted on April 30, June 3 and June 7, 2015 (docket nos. 35, 36, 38, 39). Therefore, the claims enumerated above, which were raised for the first time in the petitioner's brief, replies and notices, are untimely and cannot be a basis for habeas relief. *See DeCoteau*, 774 F.3d at 1192.

But even if each of the above enumerated claims were filed on time, none were litigated before the Iowa courts and are therefore procedurally barred. Moreover, each is without merit because, notwithstanding his claims of actual innocence, the petitioner cannot show that the purported defects in his Iowa District Court proceedings prejudiced him in any way. The Iowa Court of Appeals noted the "overwhelming evidence of [the petitioner's] guilt" and that "[t]he complaining witness offered compelling testimony supported by all the physical evidence of her assault during her confinement by [the petitioner]." App'x, PCR Appeal Opinion (docket no. 14-12) at 8. The petitioner has not introduced the clear and convincing evidence needed to rebut the court's presumption that the Iowa courts' factual determinations were correct. *See* 28 U.S.C. § 2254(e)(1). In light of the overwhelming evidence of the petitioner's guilt, the court concludes that the petitioner cannot establish that any of these newly asserted grounds would alter the outcome of his trial. Accordingly, the court shall deny relief on these grounds.

## VI. CERTIFICATE OF APPEALABILITY

In a 28 U.S.C. § 2254 proceeding before a district judge, "the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ." 28 U.S.C. § 2253(c)(1). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman*

*v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam); *Carter v. Hopkins*, 151 F.3d 872, 874 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, a petitioner must demonstrate that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569 (citing *Flieger*, 16 F.3d at 882–83); *see also Miller-El*, 537 U.S. at 335-36 (reiterating the applicable standard).

Courts can reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the petitioner failed to make the requisite "substantial showing" with respect to the grounds that he raised in the petition. Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall deny a certificate of appealability under 28 U.S.C. § 2253. If the petitioner desires further review of his 28

U.S.C. § 2254 petition for a writ of habeas corpus, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## VII. CONCLUSION

The court finds that the petitioner is not entitled to relief under 28 U.S.C. § 2254. The Iowa courts' adjudication of the petitioner's grounds did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, the petition is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of the respondent, Nick Ludwick, and against the petitioner, Rick Anthony Brandes. In addition, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 3rd day of August, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA